HONORABLE ROBERT J. BRYAN

1

2

3

4

5

6

7

8    IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
9    AT TACOMA

10   KYLA YI, individually and on behalf of          Case No.  3:18-cv-05627-RJB
all others similarly situated,
11                                                    DEFENDANT CINNABON
                         Plaintiffs,                  FRANCHISOR SPV LLC'S
12                                                    MOTION TO DISMISS
                                                     PURSUANT TO RULE 12(b)(6)
         vs.
13                                                    **NOTE ON MOTION CALENDAR:**
14   SK BAKERIES, LLC, a Washington                  **FRIDAY, NOVEMBER 2, 2018**
     Limited Liability Company,
15   CINNABON FRANCHISOR SPV LLC,                     **ORAL ARGUMENT REQUESTED**
     a Delaware Limited Liability Company;
16   and DOES 1 through 10, inclusive,

17                       Defendants.

18

19

20

21

22

23

24

25

DEFENDANT CINNABON FRANCHISOR SPV
LLC'S MOTION TO DISMISS PURSUANT TO
RULE 12(b)(6)
Case No.  3:18-cv-05627-RJB

1

## <u>TABLE OF CONTENTS</u>

2
**Page(s)**

3

INTRODUCTION ........................................................................................................1

4

THE COMPLAINT .....................................................................................................3

5

LEGAL STANDARD ..................................................................................................4

6

ARGUMENT ...............................................................................................................5

7
8

I.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS TO ALLEGE A
CONSPIRACY ACTIONABLE UNDER THE ANTITRUST LAWS.......................................5

9
10

II.   THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS TO ALLEGE
THE FACTS REQUIRED TO PLEAD AN UNREASONABLE RESTRAINT OF TRADE
UNDER SECTION 1 OF THE SHERMAN ACT ....................................................................8

11

A.    The Complaint Does Not Allege a "Relevant Market" ................................11

12

B.    The Complaint Fails to Allege Significant Anticompetitive Effects............13

13
14

C.    Plaintiff Cannot Avoid Dismissal by Mistakenly Asserting a *Per Se* Violation .........15

III.  THE STATE LAW CLAIM ALSO SHOULD BE DISMISSED .....................................18

15

CONCLUSION ...........................................................................................................19

16

17

18

19

20

21

22

23

24

25

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL, (206) 407-2200   FAX, (206) 407-2224

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Am. Ad Mgmt., Inc.* v. *GTE Corp.*,
92 F.3d 781 (9th Cir. 1996)....................................................................................5

*Am. Needle, Inc.* v. *Nat'l Football League*,
560 U.S. 183 (2010)..............................................................................................6

*AT&T Corp* v. *JMC Telecom, LLC*,
470 F. 3d 525 (3d Cir. 2006).................................................................................16

*Aydin Corp* v. *Loral Corp.*,
718 F.2d 897 (9th Cir. 1983)......................................................................13, 14, 17

*Bell Atl. Corp.* v. *Twombly*,
550 U.S. 544 (2007)....................................................................................4, 5, 16

*Big Bear Lodging Ass'n* v. *Snow Summit, Inc.*,
182 F.3d 1096 (9th Cir. 1999)................................................................................13

*Ceiling & Interior Sys. Supply, Inc.* v. *USG Interiors, Inc.*,
878 F. Supp. 1389 (W.D. Wash. 1993)....................................................................18

*Copperweld Corp.* v. *Independence Tube Corp.*,
467 U.S. 752 (1984).........................................................................................6, 18

*Danforth & Assoc., Inc.* v. *Coldwell Banker Real Estate, LCC*,
No. C10-1621, 2011 WL 3387898 (W.D. Wash. Feb. 3, 2011) .................................6

*Disney Enterprises, Inc.* v. *VidAngel, Inc.*,
No. 2:16 CV 04109, 2017 WL 6883685 (C.D. Cal. Aug. 10, 2017)............................5

*Eichorn* v. *AT&T Corp.*,
248 F.3d 131 (3d Cir. 2001)..................................................................................17

*Golden Gate Pharmacy Servs., Inc.* v. *Pfizer, Inc.*,
433 F. App'x 598 (9th Cir. 2011)...........................................................................12

*Houston Orthopedic Surgical Hosp.* v. *Steadfast Ins. Co.*,
No. CV H-11-3916, 2013 WL 12141371 (S.D. Tex. Oct. 8, 2013).............................7

*Husky Int'l Trucks* v. *Navistar*
No. C10–5409BHS, 2010 WL 4053082 (W.D. Wash. 2010) .....................................18

*In re Ins. Brokerage Antitrust Litig.*,
618 F.3d 300 (3d Cir. 2010)..................................................................................16

*Ashcroft* v. *Iqbal*,
556 U.S. 662 (2009)..............................................................................................5

DEFENDANT CINNABON FRANCHISOR SPV
LLC'S MOTION TO DISMISS PURSUANT TO
RULE 12(b)(6) - ii
Case No.  3:18-cv-05627-RJB

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL, (206) 407-2200   FAX, (206) 407-2224

*Jack Russell Terrier Network of N. Cal.* v. *Am. Kennel Club, Inc.*,
407 F.3d 1027 (9th Cir. 2005) ...................................................................................6, 7, 8

*Kendall* v. *Visa U.S.A., Inc.*,
518 F.3d 1042 (9th Cir. 2008) ...................................................................................5

*Leegin Creative Leather Prods.* v. *PSKS, Inc.*,
551 U.S. 877 (2007) ...................................................................................... *passim*

*Midwestern Waffles, Inc.* v. *Waffle House, Inc.*,
734 F.2d 704 (1984) ...................................................................................12

*Mooney* v. *AXA Advisors, L.L.C.*,
19 F. Supp. 3d 486 (S.D.N.Y. 2014) ...................................................................................10

*Murray Pub. Co.* v. *Malmquist*,
832 P.2d 493 (Wash. Ct. Appeals 1992) ...................................................................................18

*In re Musical Instruments & Equip. Antitrust Litig.*,
798 F.3d 1186 (9th Cir. 2015) ...................................................................................... *passim*

*Newcal Indus., Inc.* v. *Ikon Office Sols., Inc.*,
No. C04-2776 FMS, 2004 WL 3017002 (N.D. Cal. Dec. 23, 2004) .............................................2

*Ohio* v. *Am. Express Co.*,
138 S. Ct. 2274 (2018) ...................................................................................9, 13, 17

*Oltz* v. *St. Peter's Community Hospital*,
861 F.2d 1440 (9th Cir. 1988) ...................................................................................11

*Ove* v. *Gwinn*,
264 F.3d 817 (9th Cir. 2001) ...................................................................................5

*PSKS, Inv.* v. *Leegin Creative Leather Prods., Inc.*,
615 F.3d 412 (5th Cir. 2010) ...................................................................................15

*Shred-It Am., Inc.* v. *MacNaughton*,
No. CV 10-00547 DAE-KSC, 2011 WL 1842997 (D. Haw. May 13, 2011) ...........................13

*Stubhub, Inc.* v. *Golden State Warriors, LLC*,
No. C 15-1436 MMC, 2015 WL 6755594 (N.D. Cal. Nov. 5, 2015) ...........................13

*Tanaka* v. *Univ. of S. Cal.*,
252 F.3d 1059 (9th Cir. 2001) ...................................................................................... *passim*

*Texaco Inc.* v. *Dagher*,
547 U.S. 1 (2006) ...................................................................................16

*UARCO Inc.* v. *Lam*,
18 F. Supp. 2d 1116 (D. Haw. 1998) ...................................................................................17

*Union Circulation Co.* v. *Federal Trade Comm'n*,
241 F.2d 652 (2d Cir. 1957) ...................................................................................17

DEFENDANT CINNABON FRANCHISOR SPV
LLC'S MOTION TO DISMISS PURSUANT TO
RULE 12(b)(6) - iii
Case No.  3:18-cv-05627-RJB

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL, (206) 407-2200   FAX, (206) 407-2224

*Williams* v. *I.B. Fischer Nevada*,
999 F.2d 445 (9th Cir. 1993) ........................................................................................7, 9

*Williams* v. *Nevada*,
794 F. Supp. 1026 (D. Nev. 1992), *aff'd* 999 F.2d 445 (9th Cir. 1993) .....................7, 9, 15, 17

STATUTES

RCW 19.86.100 ...............................................................................................................18

RCW 19.86.030 ...............................................................................................................18

Sherman Act §1 ............................................................................................... *passim*

OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(6) ...............................................................................................4, 7

Marinescu, Ioana and Hovenkamp, Herbert J., "Anticompetitive Mergers in Labor Markets"
(2018). *Faculty Scholarship*. 1965.
http://scholarship.law.upenn.edu/faculty_scholarship/1965 ........................................11

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL, (206) 407-2200   FAX, (206) 407-2224

1

**INTRODUCTION**

2      The Complaint should be dismissed because Plaintiff's ambitious antitrust legal *theory* is

3  not supported by any of the *facts* required to state an antitrust cause of action.

4      Plaintiff briefly was employed by Defendant SK Bakeries at a Cinnabon franchise located

5  in the Capital Mall in Olympia.  Cinnabon bakeries make and sell cinnamon rolls and other baked

6  goods.  Plaintiff claims that because she allegedly could not be hired by any other Cinnabon

7  franchise in Washington -- although she does *not* allege that she ever tried -- wages for workers

8  like her were "suppressed."  For that allegation to state a viable antitrust claim, Plaintiff would

9  need to allege facts showing that competition in the relevant market for her labor by all other

10 potential employers has been so impaired by Defendants' alleged conduct, that wages throughout

11 the market have been depressed.

12      No such facts are alleged.  All Plaintiff alleges is that Cinnabon entered into franchise

13 agreements with franchisees like SK Bakeries which allegedly prohibit Cinnabon franchisees

14 from soliciting or hiring employees from other Cinnabon franchisees.  Plaintiff does not allege

15 that she, or any other Cinnabon franchise employee, has not been hired or could not be hired by

16 any of the hundreds or thousands of other employers in Washington.  Plaintiff has not alleged that

17 Cinnabon has entered into any "no solicit/no hire" agreements with any of its rival bakeries,

18 restaurants or food chains, or with any other employers in Washington.  Thus, Plaintiff has not

19 alleged that competition to hire her, or any other Cinnabon franchise employee, has been harmed

20 in any relevant labor market.

21      These pleading defects are fatal:

22      <u>First</u>, Plaintiff has failed to allege facts that establish an actionable "conspiracy" under

23 Section 1 of the Sherman Act and the Washington state analog, RCW 19.86.030.  Merely alleging

24 agreements between a franchisor (Cinnabon) and its franchisees (like SK Bakeries) will not

25 suffice.  On the contrary, this Court has dismissed antitrust claims where defendants were in a

DEFENDANT CINNABON FRANCHISOR SPV
LLC'S MOTION TO DISMISS PURSUANT TO
RULE 12(b)(6) - 1
Case No.  3:18-cv-05627-RJB

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL, (206) 407-2200   FAX, (206) 407-2224

"franchisor-franchisee relationship and therefore cannot conspire within the meaning of the Sherman Act." *Danforth & Assoc., Inc.* v. *Coldwell Banker Real Estate, LCC*, No. C10-1621, 2011 WL 338798, at *2 (W.D. Wash. Feb. 3, 2011). As the Court stated, "the Supreme Court and Ninth Circuit have made clear that coordinated activity between a franchisor and a franchisee does not implicate the Sherman Act." *Id.*

 <u>Second</u>, even if the challenged franchisor-franchisee agreements were actionable, Plaintiff has failed to allege facts that would establish that the agreements created an "unreasonable" restraint on trade. Like other types of vertical agreements, franchise agreements that are solely between parties who do not compete should be reviewed under the "rule of reason." *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1191 (9th Cir. 2015). That rule requires that the complaint allege, among other things, facts showing (1) a relevant antitrust market in which (2) the defendant's conduct harmed competition. *Tanaka* v. *Univ. of S. Cal.*, 252 F.3d 1059, 1063 (9th Cir. 2001). Plaintiff does not even try to satisfy those pleading requirements. The Complaint does not allege what the relevant labor market might be: it does not allege the relevant geographic area (*e.g.*, Olympia, the entire state, the country) or the relevant employment opportunities in that area (*e.g.*, Cinnabon bakeries only, other bakeries, donut shops, fast-food restaurants, all sorts of businesses). Nor does it allege that the Cinnabon franchise agreements have had any adverse impact on competition for labor among all those other employers, or on the wages paid by all those other employers.

 Plaintiff attempts to evade her obligation to plead facts showing an unreasonable restraint of trade by asserting that the Cinnabon franchise agreements constitute a *per se* antitrust violation -- meaning that the court need not require any factual allegations that the conduct had any actual anti-competitive effect. That is a legal non-starter. "Vertical agreements . . . are analyzed under the rule of reason" in the Ninth Circuit, not the *per se* rule. *Musical Instruments*, 798 F.3d at 1191.

DEFENDANT CINNABON FRANCHISOR SPV
LLC'S MOTION TO DISMISS PURSUANT TO
RULE 12(b)(6) - 2
Case No. 3:18-cv-05627-RJB

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL, (206) 407-2200   FAX, (206) 407-2224

Finally, denominating this case as a purported class action on behalf of other Cinnabon franchise employees does nothing to obviate any of Plaintiff's pleading requirements. To the contrary, Plaintiff's reference to other franchise employees only highlights the legal deficiencies in her Complaint: there is not a single fact alleged showing that competition for any putative class member's talents and skills in any labor market has been impacted, much less injured, by the Cinnabon franchise agreements. The Complaint should be dismissed.

## THE COMPLAINT

Defendant Cinnabon issues franchise licenses to other companies through the use of a franchise agreement. The franchise agreement provides the other companies with the ability to own and operate Cinnabon bakeries as franchisees. Compl. ¶ 7. One of those franchisees is Defendant SK Bakeries, LLC ("SK Bakeries"). *Id.* ¶ 6. There are allegedly 24 Cinnabon locations in the State of Washington owned and operated by Cinnabon franchisees. *Id.* ¶ 13. Cinnabon franchisees serve cinnamon rolls and other similar bakery goods.

The Cinnabon franchise agreements provide the franchisees with, among other things, the right to use the Cinnabon trademarks, and the right to access Cinnabon signage and proprietary Cinnabon ingredients and products. In addition, Plaintiff alleges that, "Since 2013, the franchisees subject to such agreements could not solicit for employment the employees of Cinnabon and/or other Cinnabon franchisees . . . and in certain years . . . could not hire the employees of Cinnabon and/or Cinnabon franchisees." *Id.* ¶ 14.

Plaintiff Kyla Yi was a "crewmember and/or supervisor in training" at a Cinnabon in the Capital Mall in Olympia owned by SK Bakeries. *Id.* ¶ 5. She claims that her wages were artificially low because employees at one Cinnabon location cannot be hired at other Cinnabon locations under the alleged "no solicit/no hire" provision of the franchise agreements. *Id.* ¶ 40.

The Complaint does not allege, however, that Plaintiff or any other employee sought to switch to another Cinnabon location and was in fact prohibited from switching. Nor does the

DEFENDANT CINNABON FRANCHISOR SPV
LLC'S MOTION TO DISMISS PURSUANT TO
RULE 12(b)(6) - 3
Case No. 3:18-cv-05627-RJB

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL, (206) 407-2200   FAX, (206) 407-2224

Complaint allege that the employment opportunities of Plaintiff, or the employees she seeks to represent, are limited to the alleged 24 Cinnabon bakeries in Washington.  There is no allegation, therefore, that Cinnabon or SK Bakeries engaged in any conduct that prevented Plaintiff from moving to any other job in the Capital Mall, elsewhere in Olympia, or anywhere else in Washington.[1]

Plaintiff seeks to represent a class of every person who has worked at Cinnabon, SK Bakeries or any of the "DOE" defendants in Washington from July 12, 2014 to the present.  *Id.* ¶ 28.  The allegations relating to the purported class members contain no more factual detail about the relevant labor markets.  *Id.* ¶¶ 28-35.  In fact, the Complaint does not even specify the relevant labor market in which Plaintiff, or any purported class member, is employed or could be employed.

Nonetheless, the Complaint alleges that the no solicit/no hire provisions in the Cinnabon franchise agreements violate Section 1 of the Sherman Act and the Washington state law analog, RCW 19.86.030.  Compl. ¶¶ 43, 52.  Plaintiff's antitrust theory is that by prohibiting her and other Cinnabon franchise employees from working at other Cinnabon locations, their wages were depressed.  *Id.* ¶¶ 40, 48.  For that to be economically plausible and, thus, state an antitrust claim, Plaintiff would have to allege facts to show that the Cinnabon franchise agreements somehow eliminated or significantly reduced competition for her labor from all *other* potential employers, and that the resulting lack of competition for hiring in the relevant labor market depressed or drove down wages.  Defendants move to dismiss because, as established below, the facts necessary to state such an antitrust claim have not been pled.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544,

---

[1] After filing this Complaint, Plaintiff voluntarily left her employment with SK Bakeries.

DEFENDANT CINNABON FRANCHISOR SPV
LLC'S MOTION TO DISMISS PURSUANT TO
RULE 12(b)(6) - 4
Case No.  3:18-cv-05627-RJB

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL, (206) 407-2200   FAX, (206) 407-2224

570 (2007).  To satisfy the *Twombly* plausibility standard, a complaint must contain sufficient factual allegations for the Court to draw the reasonable inference that the defendant engaged in anticompetitive conduct prohibited by the antitrust laws.  *Id.* at 556-7; *Kendall* v. *Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008).   Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss.  *Ove* v. *Gwinn*, 264 F.3d 817, 821 (9th Cir. 2001).  For example, a "formulaic recitation of the elements" of a claim are not entitled to the presumption of truth.  *Ashcroft* v. *Iqbal,* 556 U.S. 662, 681 (2009).  In light of the enormous expense and burden associated with discovery in antitrust actions, courts "insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Twombly*, 550 U.S. at 558 (citations omitted); *see also Kendall*, 518 F.3d at 1047 ("discovery in antitrust cases frequently causes substantial expenditures and gives the plaintiff the opportunity to extort large settlements even where he does not have much of a case").

### ARGUMENT

### I.   THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS TO ALLEGE A CONSPIRACY ACTIONABLE UNDER THE ANTITRUST LAWS

The elements of a claim under Section 1 of the Sherman Act are: "(1) an agreement, conspiracy, or combination between two or more entities; (2) an unreasonable restraint of trade under either a *per se* or rule of reason analysis; and (3) the restraint affected interstate commerce." *Am. Ad Mgmt., Inc.* v. *GTE Corp.*, 92 F.3d 781, 788 (9th Cir. 1996).

Alleging a conspiracy in restraint of trade under Section 1 of the Sherman Act requires far more than an agreement between two parties, especially when that agreement (as in this case) is not between competitors.  *See, e.g., Kendall* v. *Visa U.S.A., Inc.*, 518 F.3d 1047 (Section 1 "claimants must plead not just ultimate facts (such as a conspiracy), but evidentiary facts which, if true, will prove" the elements of the claim); *Disney Enterprises, Inc.* v. *VidAngel, Inc.*, No. 2:16 CV 04109, 2017 WL 6883685, at *7 (C.D. Cal. Aug. 10, 2017) (where agreement is not between

DEFENDANT CINNABON FRANCHISOR SPV
LLC'S MOTION TO DISMISS PURSUANT TO
RULE 12(b)(6) - 5
Case No.  3:18-cv-05627-RJB

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL, (206) 407-2200   FAX, (206) 407-2224

competitors "the plaintiff must allege both that a 'relevant market' exists and that the defendant has power within that market.") (*quoting Newcal Indus.* v. *Ikon Office Sol.*, 513 F.3d 1038, 1044 (9th Cir. 2008)).  As a threshold matter, the businesses accused of making an unlawful agreement must be capable of conspiring in a way that violates Section 1 of the Sherman Act.  "[T]he existence of more than one entity sufficient to conspire is part of the first element required to allege a [Sherman Act] § 1 violation." *Jack Russell Terrier Network of N. Cal.* v. *Am. Kennel Club, Inc.,* 407 F.3d 1027, 1034 n.14 (9th Cir. 2005).

Following Ninth Circuit precedent, this Court granted the motion to dismiss the Section 1 claim in *Danforth & Assoc., Inc.* v. *Coldwell Banker Real Estate, LCC*, No. C10-1621, 2011 WL 338798, at *2 (W.D. Wash. Feb. 3, 2011) because the defendants were "in a franchisor-franchisee relationship and therefore ***cannot conspire within the meaning of the Sherman Act***."  *See also Williams* v. *I.B. Fischer Nevada*, 999 F.2d 445, 447-48 (9th Cir. 1993) (restaurant franchisor cannot conspire with its franchisees in violation of Section 1).  Plaintiff here has alleged no facts to warrant a different result on this motion to dismiss.  As the Supreme Court held in *Copperweld Corp.* v. *Independence Tube Corp.*, 467 U.S. 752, 769 (1984), an alleged conspiracy requires scrutiny under Section 1 only if it "deprives the marketplace of the independent centers of decision making that competition assumes and demands."  If the alleged conspirators are *not* competitors or *not* otherwise "pursuing separate economic interests," then the policies and purposes of the antitrust law are not implicated.  *Am. Needle, Inc.* v. *Nat'l Football League*, 560 U.S. 183, 195 (2010).  The Sherman Act prohibits only those agreements that undermine "actual or potential competition" by separate economic actors that are pursuing "separate economic interests" and a "diversity of entrepreneurial interests."  *Id.*  (citations omitted).

Thus, "the Supreme Court and Ninth Circuit have made clear that coordinated activity between a franchisor and a franchisee does not implicate the Sherman Act." *Danforth*, 2011 WL 3387898, at *2.  *Copperweld* held that a corporation and its subsidiary were not legally capable

DEFENDANT CINNABON FRANCHISOR SPV
LLC'S MOTION TO DISMISS PURSUANT TO
RULE 12(b)(6) - 6
Case No.  3:18-cv-05627-RJB

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL, (206) 407-2200   FAX, (206) 407-2224

of conspiring in violation of Section 1, but as *Williams* and *Danforth* demonstrate, common

ownership or control among the alleged conspirators is not required for dismissal.  *See Williams*

v. *Nevada*, 794 F. Supp. 1026, 1032 (D. Nev. 1992), *aff'd* 999 F.2d 445 (9th Cir. 1993) ("For two

separate corporations to act as a single entity" for purposes of the antitrust laws it "is not necessary

that one be owned, wholly or in part, by the other corporation").  The Ninth Circuit summarized

the law:

> We have held that the single entity rule applies to principal-agent relationships, *Calculators Hawaii, Inc.* v. *Brandt, Inc.*, 724 F.2d 1332, 1336 (9th Cir. 1983), ***as well as to an agreement between a franchiser and franchisee***, *Williams* v. *I.B. Fischer Nevada*, 999 F.2d 445, 447-48 (9th Cir. 1993) (per curiam).

*Jack Russell Terrier*, 407 F.3d at 1034 (affirming Rule 12(b)(6) dismissal on *Copperweld*

grounds) (emphasis added).[2]

The Ninth Circuit explained in Williams that the franchisor-franchisee relationship in the

fast-food business is not depriving the market of the benefits of competition since they are not

competitors and are not pursuing separate economic interests:

> In a fast-food franchise the franchisor does everything to promote a uniform, non-competitive environment between the franchises:  Each franchise serves substantially the same products; the products are served to the public in the same manner; the franchisor develops products and services for all franchises; the employees dress alike; the decor of each franchise is similar; the franchises are advertised as a single enterprise with a single logo. . . .

*Williams*, 794 F. Supp. at 1031, *aff'd* 999 F.2d 445.  In a franchise system like Cinnabon, the

franchisor and the franchisee share a common interest in providing the best Cinnabon-branded

---

[2] The *Copperweld* analysis arises from the elements of a Sherman Act Section 1 claim, and as such is distinct from other legal concepts that look beyond corporate formalities for liability purposes.  For example, *Copperweld* -- with its focus on the substance of competition -- is a different analysis than questions involving piercing the corporate veil (which can encompass equitable considerations and look to whether corporate formalities have been observed, assets co-mingled, etc.) or joint employer liability (which can focus on, among other things, whether one entity supervised and controlled the work schedules of another entities' employees, determined the method of employee payment, etc.).  *See, e.g., Houston Orthopedic Surgical Hosp.* v. *Steadfast Ins. Co.*, No. CV H-11-3916, 2013 WL 12141371, at *4 (S.D. Tex. Oct. 8, 2013) ("*Copperweld* is a Sherman Act § 1 case and Plaintiffs do not explain why a case describing the relationship between a parent and a subsidiary for the purposes of an antitrust claim is instructive in" evaluating whether to pierce the corporate veil).

DEFENDANT CINNABON FRANCHISOR SPV
LLC'S MOTION TO DISMISS PURSUANT TO
RULE 12(b)(6) - 7
Case No.  3:18-cv-05627-RJB

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL, (206) 407-2200   FAX, (206) 407-2224

products and services. *Id.* at 1032 ("As [franchise] restaurants prosper because of the uniformity of quality food and service, each franchise benefits from an enhanced reputation which results in an increase in business, as does the franchisor who is able to sell more franchises at … higher prices."). For antitrust purposes, the competition to be promoted and protected is the interbrand competition between rival businesses, with Cinnabon and its franchisees working together to compete against other companies for customer sales and loyalty. *Leegin Creative Leather Prods.* v. *PSKS, Inc.*, 551 U.S. 877, 890 (2007) ("The promotion of interbrand competition is important because 'the primary purpose of the antitrust laws is to protect [this type of] competition.'") (*citing State Oil Co.* v. *Khan*, 522 U.S. 3, 15 (1997)). With robust interbrand competition -- which is *not* alleged to be lacking here -- consumers can choose between Cinnabon and other options (Dunkin' Donuts and Krispy Kreme, to name just two), and franchise employees can choose to work for myriad other businesses and employers.

The Complaint here does not allege any facts to the contrary. Nor does the Complaint allege any facts that distinguish this pleading from *Williams* and *Danforth*. Rather, as in *Jack Russell Terrier,* the Plaintiff has alleged no facts to show that "co-defendants had divergent economic interests, or what goals the affiliates pursued other than those of" the Cinnabon franchise system. 407 F.3d at 1035. As the Ninth Circuit found, "Although [courts] assume the truth of the facts alleged in the complaint, [courts] cannot assume any facts necessary to the appellants' claim that they have not alleged." *Id.*

## II. THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS TO ALLEGE THE FACTS REQUIRED TO PLEAD AN UNREASONABLE RESTRAINT OF TRADE UNDER SECTION 1 OF THE SHERMAN ACT

Even if Plaintiff had alleged facts showing that Cinnabon and its franchisees were capable of conspiring under the antitrust laws, the Complaint should still be dismissed because it fails to allege the facts necessary to state a claim that the alleged no solicit/no hire provision in the Cinnabon franchise agreements is an "unreasonable restraint of trade." The pleading

DEFENDANT CINNABON FRANCHISOR SPV
LLC'S MOTION TO DISMISS PURSUANT TO
RULE 12(b)(6) - 8
Case No. 3:18-cv-05627-RJB

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL, (206) 407-2200   FAX, (206) 407-2224

requirements for a Section 1 claim depend largely on the type of agreement at issue. *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1191-92 (9th Cir. 2015). In analyzing the reasonableness of an agreement, "the Supreme Court has distinguished between agreements made up and down a supply chain, such as between a manufacturer and a retailer ('vertical agreements'), and agreements made among competitors ('horizontal agreements')." *Id.* at 1191 (*citing N. Pac. Ry.* v. *United States,* 356 U.S. 1, 5 (1958)).

The Complaint here alleges vertical intrabrand agreements: franchise agreements between Cinnabon and its Cinnabon-branded franchisees. *See, e.g.,* Compl. ¶ 4 ("Cinnabon entered into agreements with its franchisees"); ¶ 7 ("Cinnabon entered into agreements with its franchisees . . . that contained no-hire and non-solicitation provisions"). The Ninth Circuit has held that vertical agreements "**are analyzed under the rule of reason" and not under the *per se* rule.** *Musical Instruments*, 798 F.3d at 1191 (emphasis added); *cf. Williams v. I.B. Fischer Nevada*, 999 F.2d 445, 448 (9th Cir. 1993) (intrabrand vertical "no switching" agreements between a franchisor and franchisee were not subject to the *per se* rule because "only group boycotts engaged in by [horizontal] competitors are per se illegal") (*citing Calculators Hawaii, Inc.* v. *Brandt, Inc.*, 724 F.2d 1332, 1337 n.2 (9th Cir. 1983)).

Vertical agreements generally are subject to the rule of reason because "vertical restraints may have procompetitive justifications that benefit consumers." *Musical Instruments*, 798 F.3d at 1191 (*citing Leegin,* 551 U.S. at 889–92). Unlike horizontal agreements between rival businesses, some of which have no purpose other than to harm competition and consumers -- *e.g.*, price fixing agreements between competing manufacturers -- vertical contractual restrictions "can stimulate interbrand competition," like competition between different brands of fast-food and/or bakery products. *Leegin,* 551 U.S. at 887. "The promotion of interbrand competition is important because 'the primary purpose of the antitrust laws is to protect [this type of] competition.'" *Id.* (*citing Khan*, 522 U.S. at 15) (emphasis added); *cf. Williams*, v. *Nevada*, 794 F. Supp. 1026, 1034

DEFENDANT CINNABON FRANCHISOR SPV
LLC'S MOTION TO DISMISS PURSUANT TO
RULE 12(b)(6) - 9
Case No.  3:18-cv-05627-RJB

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL, (206) 407-2200   FAX, (206) 407-2224

1  (D. Nev. 1992), *aff'd* 999 F.2d 445 (9th Cir. 1993) ("no switching" agreement between franchisor

2  and franchisee was "not anticompetitive" where it "only effects [Plaintiffs'] ability to move within

3  [the Jack-in-the-Box fast-food] enterprise and has no impact upon other businesses that may be

4  interested in [Plaintiffs'] skills as a manager").

5      At the pleading stage, the rule of reason requires a plaintiff to allege facts showing that the

6  alleged restraint produces "significant anticompetitive effects" within a "relevant market."

7  *Tanaka*, 252 F.3d at 1063 (internal citations omitted); *see also Ohio* v. *Am. Express Co.*, 138 S.

8  Ct. 2274 (2018) at 2285 ("[C]ourts usually cannot properly apply the rule of reason without an

9  accurate definition of the relevant market. 'Without a definition of [the] market there is no way

10  to measure [the defendant's] ability to lessen or destroy competition.'") (*quoting Walker Process*

11  *Equipment, Inc.* v. *Food Machinery & Chemical Corp.*, 382 U.S. 172, 177 (1965)).

12      At a minimum, Plaintiff needs to plead facts showing that the alleged inability of

13  employees at one Cinnabon location to be employed at another Cinnabon location has so

14  significantly suppressed competition for their skills among all other potential employers, that

15  wages have been suppressed by that lack of competition. *Tanaka*, 252 F.3d at 1063; *see also*

16  *Mooney* v. *AXA Advisors, L.L.C.*, 19 F. Supp. 3d 486, 502 (S.D.N.Y. 2014) ("Without alleging

17  all reasonably interchangeable substitutes for AXA-affiliated employees or alleging a plausible

18  explanation for why the Court should regard competition for AXA-affiliated employees as a

19  market unto itself, [plaintiff] has failed to adequately allege a relevant market."). If, on the other

20  hand, other businesses in the market are unrestrained in competing for the labor of Cinnabon

21  franchise employees, then the no solicit/no hire clause cannot plausibly be an unreasonable

22  restraint on trade. *Tanaka*, 252 F.3d at 1063-64.

23      That wages for certain job categories might be perceived as low or unfair is, if true, the

24  result of numerous and complex economic forces and phenomena affecting the relevant

25  geographic and product labor markets. Accordingly, to attribute that to the franchise agreements

DEFENDANT CINNABON FRANCHISOR SPV
LLC'S MOTION TO DISMISS PURSUANT TO
RULE 12(b)(6) - 10
Case No. 3:18-cv-05627-RJB

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL, (206) 407-2200   FAX, (206) 407-2224

1  for 24 cinnamon roll bakeries, and to plead that the agreements are an antitrust violation, requires

2  specific and plausible factual allegations regarding the relevant market and anticompetitive

3  effects of those franchise agreements in that market.  Since Plaintiff has not even tried to plead

4  facts to establish (a) a relevant labor market or (b) the required anticompetitive effects in any such

5  market, the Complaint fails to state a viable Section 1 claim and should be dismissed.

6  **A.  The Complaint Does Not Allege a "Relevant Market"**

7  Plaintiff must allege that competition for labor, and thus competition over wages for that

8  labor, were suppressed in a relevant "hiring market."  *See* Marinescu, Ioana and Hovenkamp,

9  Herbert J., "Anticompetitive Mergers in Labor Markets" at 15 (2018). *Faculty Scholarship*. 1965,

10  *available at* http://scholarship.law.upenn.edu/faculty_scholarship/1965 ("*Hovenkamp*").  Under

11  general antitrust principles, the "relevant market" encompasses both a "geographic market" and

12  a "product market."  *Id.* at 21.  "The geographic market extends to the 'area of effective

13  competition . . . where buyers can turn for alternative sources of supply.'  The product market

14  includes the pool of goods or services that enjoy reasonable interchangeability of use and cross-

15  elasticity of demand."  *Oltz* v. *St. Peter's Community Hospital*, 861 F.2d 1440, 1446 (9th Cir.

16  1988) (internal citations omitted).

17  In the case of competition for labor, the "boundaries of labor product markets are driven

18  mainly by employee skills and training" -- *i.e.*, in what other businesses and for what other

19  employers can Plaintiff and other Cinnabon franchise employees work.  *Hovenkamp* at 21.

20  "Geographic markets are driven mainly by location and mobility of current or prospective

21  employees" -- *i.e.*, is the relevant labor market restricted to Olympia, or does it encompass a

22  broader geographic region.  *Id.*  In sum, a relevant labor market defines where and what are the

23  other job opportunities.  Alleging such a relevant labor market is essential to stating a Section 1

24  claim because if employees have "sufficient mobility" and range of job opportunities in that

25

DEFENDANT CINNABON FRANCHISOR SPV
LLC'S MOTION TO DISMISS PURSUANT TO
RULE 12(b)(6) - 11
Case No.  3:18-cv-05627-RJB

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL, (206) 407-2200   FAX, (206) 407-2224

market, "the result will be ***higher*** wages and salaries," not lower wages.  *Id.* at 18 (emphasis added).

The Complaint does not even purport to allege any relevant labor markets, by type of employment or geography.  Plaintiff variously refers to the "industry" (Compl. ¶¶ 15, 26), "low-wage" workers (*Id.* ¶¶ 18, 25), "fast-food" workers (*Id.* ¶¶ 18, 25), cinnamon roll makers (*Id.* ¶ 17), and Defendant's employees (*Id.* ¶ 15).  Sometimes the Complaint refers vaguely to multiple "labor markets" (*Id.* ¶ 20) and other times to a singular "market" (*Id.* ¶ 50), but it never alleges with specificity -- or the necessary supporting facts -- the identity and boundaries of any relevant labor market.

If Plaintiff intends to imply that the entire relevant market is confined to the alleged 24 Cinnabon locations in Washington, she has not alleged facts to support such a miniscule labor market.  As other courts have recognized, there is no coherent antitrust market limited only to employment at one brand of fast-food stores.  *See, e.g., Midwestern Waffles, Inc.* v. *Waffle House, Inc.*, 734 F.2d 705, 720 (1984) ("whatever the relevant market is here, it is a great deal broader than the Waffle House system and encompasses much, if not all, of the fast food industry").  And Plaintiff has not alleged that she has such highly specialized skills, or that Cinnabon offers such irreplaceably unique products or services, that employees of Cinnabon bakeries cannot find employment anywhere else.  Compl. ¶¶ 5, 18.

The "[f]ailure to identify a relevant market is a proper ground for dismissing a Sherman Act claim" under the rule of reason.  *Tanaka*, 252 F.3d at 1063; *see also Newcal Indus., Inc.* v. *Ikon Office Sols., Inc.*, No. C04-2776 FMS, 2004 WL 3017002, at *3 (N.D. Cal. Dec. 23, 2004) (citing cases and stating that "[c]ircuit courts that have addressed the issue, including the Ninth Circuit, have held that the plaintiff's failure to identify a relevant market is a proper ground for dismissal in a Rule 12(b)(6) motion").  Accordingly, courts in the Ninth Circuit regularly dismiss rule of reason cases that fail to allege the relevant markets.  *See, e.g., Golden Gate Pharmacy*

DEFENDANT CINNABON FRANCHISOR SPV
LLC'S MOTION TO DISMISS PURSUANT TO
RULE 12(b)(6) - 12
Case No.  3:18-cv-05627-RJB

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL, (206) 407-2200   FAX, (206) 407-2224

1    *Servs., Inc.* v. *Pfizer, Inc.*, 433 F. App'x 598, 599 (9th Cir. 2011) (affirming dismissal because of

2    "[t]he failure to allege a product market consisting of reasonably interchangeable goods");

3    *Stubhub, Inc.* v. *Golden State Warriors, LLC*, No. C 15-1436 MMC, 2015 WL 6755594, at *4

4    (N.D. Cal. Nov. 5, 2015) (granting motion to dismiss "for failure to allege a cognizable product

5    market"); *Shred-It Am., Inc.* v. *MacNaughton*, No. CV 10-00547 DAE-KSC, 2011 WL 1842997,

6    at *6 (D. Haw. May 13, 2011) (granting motion to dismiss where plaintiff "provided nothing more

7    than [a] legal conclusion that the relevant market is the 'mobile, on-site document destruction

8    industry in Hawaii'").  The Complaint here should be dismissed too.

9              **B.  The Complaint Fails to Allege Significant Anticompetitive Effects**

10              The Complaint does not allege any facts that would (if true) establish that competition for

11    hiring workers like Plaintiff by all the other potential employers in the labor market, has been

12    adversely impacted by the Cinnabon franchise agreements.   All it alleges is that Cinnabon

13    franchise employees cannot be hired to work at other Cinnabon locations.   It does *not* allege that

14    the no solicit/no hire clause has had any impact on other employment opportunities or -- and this

15    is dispositive in an antitrust case -- any impact on the competition for labor between those other

16    potential employers.   Accordingly, Plaintiff has failed to allege facts showing that Cinnabon's no

17    solicit/no hire provisions produced "significant anticompetitive effects" within any relevant

18    market.   *See Tanaka*, 252 F.3d at 1064 (internal citations omitted) (affirming grant of motion to

19    dismiss where plaintiff "failed to allege that the [restriction] has had significant anticompetitive

20    effects within a relevant market, however defined"); *Big Bear Lodging Ass'n* v. *Snow Summit,

21    Inc.*, 182 F.3d 1096, 1104–05 (9th Cir. 1999) (dismissing claim where plaintiffs fail to allege "that

22    Defendants' conduct resulted in anticompetitive effects within appropriately defined markets");

23    *Aydin Corp* v. *Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (a plaintiff "has the burden to plead

24    and prove that the actions of [defendant] harmed competition").

25

DEFENDANT CINNABON FRANCHISOR SPV
LLC'S MOTION TO DISMISS PURSUANT TO
RULE 12(b)(6) - 13
Case No.  3:18-cv-05627-RJB

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL, (206) 407-2200   FAX, (206) 407-2224

Anticompetitive effects under Section 1 can generally be shown through either (1) "direct evidence," such as "reduced output, increased prices, or decreased quality in the relevant market"; or (2) "indirect evidence . . . of market power plus some evidence that the challenged restraint harms competition." *Am. Express Co.*, 138 S. Ct. 2274, 2284 (2018). For vertical agreements, even where Plaintiffs pursue the "direct evidence" route, Plaintiffs must also establish the defendant has "market power." *Id.* at 2285 n.7 ("Vertical restraints often pose no risk to competition unless the entity imposing them has market power, which cannot be evaluated unless the Court first defines the relevant market.").

Plaintiff has alleged neither "direct evidence" nor "indirect evidence," and has not alleged that Cinnabon has market power. The Complaint has no allegations of any relevant market, let alone reduced output, increased prices or decreased quality across any relevant market. Moreover, there are no allegations of Defendants' market power or even their market shares in any relevant market. *Cf. Aydin Corp.*, 718 F.2d at 902 (concluding that the "employee labor market allegations" did not support a finding that the defendants actions "harmed competition" where "[w]e are at a loss to identify with any specificity the 'field[s] of competition [with which] we are concerned and the dimensions of [those] field[s]'").

In *Tanaka*, the plaintiff challenged the PAC-10 conference rule restricting immediate transfers of student-athletes between PAC-10 universities. After concluding that the plaintiff did not adequately allege a relevant market for her soccer services (plaintiff implausibly alleged the market was restricted to UCLA's women's soccer program), the Ninth Circuit found that the plaintiff failed to allege significant anticompetitive effects:

> If the relevant market is national in scope, as Tanaka's own complaint suggests, the transfer rule most certainly does not have a significant anticompetitive effect. By its own terms, the Pac-10 transfer rule applies only to intraconference transfers; it has no application to student-athletes who transfer to nonmember institutions.

252 F.3d at 1064. Just as the PAC-10 transfer rule in *Tanaka* was not anticompetitive because it had "no application" to soccer players willing to perform outside the PAC-10, here, the alleged

DEFENDANT CINNABON FRANCHISOR SPV
LLC'S MOTION TO DISMISS PURSUANT TO
RULE 12(b)(6) - 14
Case No. 3:18-cv-05627-RJB

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL, (206) 407-2200   FAX, (206) 407-2224

Cinnabon no solicit/no hire provision is not anticompetitive because it has "no application" to employees willing to work outside the Cinnabon system.  That is, there is no alleged, or plausible, anticompetitive effect because the provision has no effect outside of the Cinnabon system.  *See also PSKS, Inv.* v. *Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 419 (5th Cir. 2010) (affirming dismissal at the pleading stage where "[e]ven accepting PSKS's factual allegations as true, nothing in its complaint plausibly alleges a harm to interbrand competition"); *Williams*, 794 F. Supp. 1034 (finding "no switching" agreement between franchisor and franchisee was "not anticompetitive" where it "only effects [Plaintiffs'] ability to move within [the Jack-in-the-Box fast-food] enterprise and has no impact upon other businesses that may be interested in [Plaintiffs'] skills as a manager").[3]

Thus, the very essence of an antitrust claim -- an *anticompetitive* effect from the challenged conduct -- is missing from the Complaint.  No facts are alleged indicating that the Cinnabon franchise agreements so stymied all other prospective employers from competing against each other to hire people like Plaintiff, that they stopped competing on wages and benefits.  There is no antitrust claim here.

### C.  Plaintiff Cannot Avoid Dismissal by Mistakenly Asserting a *Per Se* Violation

Plaintiff apparently seeks to avoid alleging the required elements of her Section 1 claim by asserting that the vertical agreements between Cinnabon and its franchisees are *per se* violations. Compl. ¶¶ 2, 7, 12 (asserting "Defendants engaged in *per se* violations" because "Cinnabon entered into agreements with its franchisees . . . that contained no-hire and non-solicitation provisions").

However, Plaintiff's conclusory *per se* assertion is wrong as a matter of law:  the Ninth

---

[3] Even if Cinnabon-branded bakeries were a cognizable labor market (they are not), the Complaint still would have not alleged a significant anticompetitive effect in that "market," because there is no allegation that Plaintiff attempted to move to another Cinnabon bakery or that Cinnabon bakeries would have solicited her in the absence of the provisions.  *See Tanaka*, 52 F.3d at 1064 (concluding that even if plaintiff claimed the market were limited to Pac-10 schools, there was still no allegation of anticompetitive effect because the restriction at issue was only enforced once).

DEFENDANT CINNABON FRANCHISOR SPV
LLC'S MOTION TO DISMISS PURSUANT TO
RULE 12(b)(6) - 15
Case No.  3:18-cv-05627-RJB

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL, (206) 407-2200   FAX, (206) 407-2224

Circuit applies the rule of reason to vertical agreements.  *Musical Instruments*, 798 F.3d at 1191.

"While pleading exclusively *per se* violations can lighten a plaintiff's litigation burdens, it is not

a riskless strategy.  If the court determines that the restraint at issue . . . require[s] application of

the rule of reason, ***the plaintiff's claims will be dismissed***."  *In re Ins. Brokerage Antitrust Litig.*,

618 F.3d 300, 317 (3d Cir. 2010) (emphasis added); *see also Texaco Inc.* v. *Dagher*, 547 U.S. 1,

7 n.2 (2006) (refusing to analyze a claim under the rule of reason when plaintiffs put forth solely

a *per se* claim); *AT&T Corp* v. *JMC Telecom, LLC*, 470 F.3d 525, 531 (3d Cir. 2006) (affirming

dismissal at pleading stage because the plaintiff invoked only the *per se* rule to attack conduct

judged under the rule of reason).

The *per se* rule was developed for conduct that plainly has no purpose but to harm

competition.  *Leegin*, 551 U.S. at 886.  It is reserved for conduct with which "courts have had

considerable experience" such that the court "can predict with confidence that [the restraint]

would be invalidated in all or almost all instances under the rule of reason."  *Leegin*, 551 U.S. at

886-87.  Examples include horizontal agreements between competitors to cease competing

against each other by fixing prices, rigging bids, and dividing product or geographic markets.  *In

re Musical Instruments*, 798 F.3d at 1191 ("Classic examples include agreements among

competitors to fix prices, divide markets, and refuse to deal.").  In such instances, "[o]nce the

agreement's existence is established, no further inquiry into the practice's actual effect on the

market or the parties' intentions is necessary to establish a § 1 violation."  *Musical Instruments*,

798 F.3d at 1191.  But "[r]esort to *per se* rules is confined to restraints. . . 'that would always or

almost always tend to restrict competition and decrease output'" and lack "any redeeming virtue."

*Leegin*, 551 U.S. at 886-87.

Merely labeling conduct a *per se* violation, as Plaintiff does, is not sufficient to survive a

12(b)(6) motion.  *See Twombly*, 550 U.S. at 557 ("a conclusory allegation of agreement at some

unidentified point does not supply facts adequate to show illegality"); *In re Musical Instruments*,

DEFENDANT CINNABON FRANCHISOR SPV
LLC'S MOTION TO DISMISS PURSUANT TO
RULE 12(b)(6) - 16
Case No.  3:18-cv-05627-RJB

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL, (206) 407-2200   FAX, (206) 407-2224

798 F.3d at 1198 (affirming motion to dismiss purported *per se* claims where complaint "failed to allege enough nonconclusory facts to support a plausible inference" of a horizontal agreement). Plaintiff has failed to plead any facts about the operation or effect of the Cinnabon franchise agreements that would bring it within the *per se* rule -- *i.e.*, that would justify condemning the alleged no solicit/no hire clause without a factual basis from which to conclude that it actually harmed competition, actually depressed wages, and actually has no benefits for consumers. *Am. Express*, 138 S. Ct. at 2283-84 ("Typically only 'horizontal' restraints—restraints 'imposed by agreement between competitors'—qualify as unreasonable *per se*."). No court has ever declared such franchisor-franchisee provisions to be *per se* unlawful.[4] And neither this Court nor any other has had "considerable experience" with the conduct alleged here to "predict with confidence" that it would be invalidated under the rule of reason. *Leegin*, 551 U.S. at 886-87. In fact, no such intrabrand provision has ever been invalidated under the rule of reason. To the contrary, the Ninth Circuit has concluded similar restrictions in franchise agreements were not anticompetitive. *See Williams*, 794 F. Supp. 1034 ("no switching" agreement between franchisor and franchisee was "not anticompetitive").

Plaintiff has not, for example, alleged any horizontal agreement between competitors. She does allege that Cinnabon has franchise agreements containing the no solicit/no hire clause with each of its franchisees, Compl. ¶ 7, but even if the Court were to assume the franchisees were competitors, there is no allegation that the franchisees agreed or conspired with each other. Alleging parallel vertical agreements is not sufficient to allege a horizontal agreement or

---

[4] In fact, multiple courts have concluded that even horizontal "no hire" agreements are evaluated under the rule of reason. *See, e.g., Union Circulation Co.* v. *Federal Trade Comm'n*, 241 F.2d 652, 657 (2d Cir. 1957) (applying the rule of reason to agreements between competitors not to hire each other's employees); *UARCO Inc.* v. *Lam*, 18 F. Supp. 2d 1116, 1124 (D. Haw. 1998) ("A court must apply the rule of reason to determine whether such an agreement [between competitors] is illegal" because "[t]o determine the legality of no-hire agreements among competitors, 'courts should examine the alternative employment opportunities available to those employees affected by the agreement.'"); *see also Eichorn* v. *AT&T Corp.*, 248 F.3d 131, 144 (3d Cir. 2001) (no hire agreement between a company that sold a subsidiary and the buyer was "more appropriately analyzed under the rule of reason"); *Aydin Corp.*, 718 F.2d 900 (agreement between company and former employee now at a competitor "not to compete or interfere with the [first] employer's business after the end of the employment relationship" should "not be tested under the per se rule.").

DEFENDANT CINNABON FRANCHISOR SPV
LLC'S MOTION TO DISMISS PURSUANT TO
RULE 12(b)(6) - 17
Case No. 3:18-cv-05627-RJB

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL, (206) 407-2200   FAX, (206) 407-2224

conspiracy.  *Musical Instruments*, 798 F.3d at 1193.  "Plaintiffs must plead something more, some further factual enhancement, a further circumstance pointing toward a meeting of the minds of the alleged conspirators."  *Id*. (quotation marks omitted).  If Plaintiff means to allege some kind of unsaid or unwritten horizontal agreement among the franchisees, she has failed to allege any of the necessary facts:  "plaintiffs must plead evidentiary facts," such as "who, did what, to whom (or with whom), where, and when."  *Id*. at 1194 n.6 (quotation marks omitted).

For these reasons, the Sherman Act Section 1 claim must be dismissed.

## III.    THE STATE LAW CLAIM ALSO SHOULD BE DISMISSED

In considering the Washington state law analog to Section 1 of the Sherman Act, RCW 19.86.030, "courts are to be guided by federal decisions interpreting comparable federal provisions."  *Murray Pub. Co.* v. *Malmquist*, 832 P.2d 493, 497 (Wash. Ct. Appeals 1992).  This is because "RCW 19.86.030 is essentially identical to Section 1 of the Sherman Act."  *Id*.  As a result, the state law claim under RCW 19.86.030 should be dismissed for the same reasons that the Sherman Act claim should be dismissed.  *See, e.g., Husky Int'l Trucks* v. *Navistar*, No. C10–5409BHS, 2010 WL 4053082 at *17-19 (W.D. Wash. 2010) (granting motion to dismiss RCW 19.86.030 claim on the basis of *Copperweld*); *Ceiling & Interior Sys. Supply, Inc.* v. *USG Interiors, Inc*., 878 F. Supp. 1389, 1395 (W.D. Wash. 1993) (dismissing RCW 19.86.030 claim for failure to allege a relevant market).[5]

---

[5] Plaintiff points to an Assurance of Discontinuation that Cinnabon agreed to with the State of Washington (Compl. ¶¶ 11 n.1, 14), but she fails to disclose that the AOD does not claim a "*per se*" violation.  Moreover, the AOD states that Cinnabon "expressly den[ies]" that the conduct violates any law, and that "[p]ursuant to RCW 19.86.100, neither this AOD nor its terms shall be construed as an admission of law, fact, liability, misconduct, or wrongdoing."  AOD ¶ 2.4.

DEFENDANT CINNABON FRANCHISOR SPV
LLC'S MOTION TO DISMISS PURSUANT TO
RULE 12(b)(6) - 18
Case No.  3:18-cv-05627-RJB

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL, (206) 407-2200   FAX, (206) 407-2224

1

**CONCLUSION**

2

For the above reasons, the Complaint should be dismissed.

3

4

DATED this 11th day of October, 2018.

5

**CALFO EAKES & OSTROVSKY PLLC**

6

By _____*s/ Angelo J. Calfo*_____

7

Angelo J. Calfo, WSBA# 27079
1301 Second Avenue, Suite 2800

8

Seattle, WA  98101
Phone: (206) 407-2210

9

Fax: (206) 407-2224
Email:  angeloc@calfoeakes.com

10

11

**PAUL WEISS RIFKIND WHARTON &
GARRISON LLP**

12

Robert A. Atkins (Pro Hac Vice)

13

Adam J. Bernstein (Pro Hac Vice)
1285 Avenue of the Americas

14

New York, NY  10019-6064
Phone: (212) 373-3000

15

Fax: (212) 757-3990
Email: ratkins@paulweiss.com

16

abernstein@paulweiss.com

17

Daniel J. Howley (Pro Hac Vice)

18

2001 K Street, NW
Washington, DC  20006-1047

19

Phone: (202) 223-7372
Fax: (202) 204-7372

20

Email: dhowley@paulweiss.com

21

*Attorneys for Defendant Cinnabon Franchisor SPV LLC*

22

23

24

25

DEFENDANT CINNABON FRANCHISOR SPV
LLC'S MOTION TO DISMISS PURSUANT TO
RULE 12(b)(6) - 19
Case No.  3:18-cv-05627-RJB

1

## **CERTIFICATE OF SERVICE**

2

The undersigned hereby certifies that on October 11, 2018, I electronically filed the

3

foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of

4

such filing to all CM/ECF participants.

5

DATED this 11th day of October, 2018.

6

7

_s/Susie Johnson_

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DEFENDANT CINNABON FRANCHISOR SPV
LLC'S MOTION TO DISMISS PURSUANT TO
RULE 12(b)(6) - 20
Case No.  3:18-cv-05627-RJB